# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TICA N. BROOKS,**

      **Plaintiff,**

**v.**                                                                                                     Case No: 6:17-cv-325-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

# MEMORANDUM OF DECISION

Tica Brooks (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") committed reversible error by: 1) applying improper legal standards to three medical opinions from Claimant's treating physicians; and 2) rejecting the opinions of Claimant's treating physicians while finding the opinions of state agency medical consultants to be supported by the record. Doc. No. 19 at 25-33. Claimant requests that the Commissioner's final decision be reversed and remanded for further proceedings. *Id.* at 39. For the reasons stated below, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

## I. PROCEDURAL BACKGROUND

On August 30, 2012, Claimant filed her DIB application alleging an onset date of November 20, 2010. R. 36. Claimant alleges disability due to a brain tumor, depression, neuropathy, headaches, low back pain, neck pain, seizures, shoulder pain, obesity, insomnia, traumatic brain injury, scoliosis, rheumatoid arthritis, and fibromyalgia. R. 307. Claimant's

application was denied initially and upon reconsideration, and she requested a hearing before an ALJ on May 18, 2013. R. 175. On April 22, 2015, Claimant attended a hearing before the ALJ. R. 63-102. On June 2, 2015, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 36-52. On July 27, 2015, Claimant requested review of the ALJ's decision. R. 27. On December 22, 2016, the Appeals Council denied Claimant's request. R. 1-7. On February 23, 2017, Claimant filed this appeal. Doc. No. 1.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must take into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (citations and quotations omitted).

## III. WEIGHING MEDICAL OPINIONS

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In cases involving an ALJ's handling of medical opinions, "substantial-evidence review ... involves some intricacy." *Gaskin v.*

*Comm'r of Soc. Sec.*, 533 F. App'x. 929, 931 (11th Cir. 2013).[1] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citations omitted). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (finding that a failure to state with particularity the weight given to medical opinions and the reasons therefor constitutes reversible error). An ALJ may not "implicitly discount" or ignore any medical opinion. *Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x. 960, 962-63 (11th Cir. 2015) (finding that it is reversible error for the ALJ to fail to state weight given to a non-examining physician's opinion).

Absent good cause, the opinion of a treating physician must be given substantial weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

## IV. ANALYSIS

### A. Dr. Gates

On February 18, 2013, Dr. Todd Gates, a treating physician, completed a Mental Impairment Questionnaire. R. 868-74. Dr. Gates diagnosed Claimant with organic mood disorder, organic personality disorder, pituitary adenoma seizure disorder, recurrent major depression, and post-traumatic stress disorder. R. 868. Dr. Gates found that Claimant exhibited drowsiness, tremors, very poor concentration, low energy, chronic headaches, and suicidal preoccupation. *Id.*

Dr. Gates then found that Claimant was either unable to meet competitive standards or has no useful ability to function in a number of areas including: remembering work-like procedures; understanding, remembering, and carrying out very short and simple instructions; maintaining attention for two hour segments; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; interacting appropriately with the general public; and maintaining socially appropriate behavior.[2] R. 870-71. Dr. Gates also found that Claimant has a low IQ or reduced intellectual functioning due to head trauma and found that Claimant has complications of persistent headaches arising from such trauma. R. 871.

In another portion of the questionnaire, Dr. Gates found the following: Claimant has marked limitations in activities of daily living and maintaining social functioning. R. 872. Claimant has extreme limitations in maintaining concentration, persistence, and pace and has had four or more episodes of decompensation within a twelve-month period, with each episode lasting at least two weeks. *Id.* Claimant has a current history of one or more years' inability to function

---

[2] According to the questionnaire, "unable to meet competitive standards" means that the claimant has noticeable difficulty performing a given task from twenty-one to forty percent of the workday or workweek. R. 870. "No useful ability to function," which the form notes is an "extreme limitation," means that the claimant cannot perform a given task on a regular, reliable, and sustained schedule in a regular work setting. *Id.*

outside of a highly supportive living arrangement with an indication of continued need for such arrangement. *Id.* Claimant has an anxiety-related disorder and a complete inability to function independently outside the area of her home. *Id.* Claimant will either be absent from work or unable to complete an eight-hour work day for five or more days per month due to her impairments and/or need for ongoing medical treatment. R. 873.

At step three, the ALJ rejected the portion of Dr. Gates' opinion regarding Claimant's limitations on her activities of daily living, social functioning, maintaining concentration, persistence, and pace, and episodes of decompensation.[3] R. 42. Specifically, the ALJ found that Dr. Gates' findings were not supported by the record "as will be more fully set forth herein…" *Id.* Later, the ALJ stated the following:

> The [ALJ] additionally relied on the fact that [Claimant] is a mother of three, the youngest of whom is two years old; she admits to being able to run her household, albeit with assistance of others due to physical limitations. Such activity runs directly counter to the opinion evidence offered by [Dr. Gates …] Additionally there is no evidence that [Claimant] depends upon others for her personal needs.

R. 42 (emphasis added).

At step four, the ALJ gave great weight to the medical opinion of Dr. Barbara Paulillo which states that Claimant was oriented to time, place, situation, and person, and describing Claimant's attention and concentration as good.[4] R. 49 (citing R. 524). The ALJ also gave some

---

[3] The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The ALJ must determine: 1) whether the claimant has engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the severe impairment meets or equals the severity of one of the listed impairments; 4) whether the claimant has the residual functional capacity to perform their past relevant work; and 5) whether the claimant could perform other work within the national economy. *Id.* At step three, a "claimant's mental impairments are evaluated based on how they impact these functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Santos v. Soc. Sec. Admin., Comm'r.*, No. 17-13605, 2018 WL 1830908, at * 4 (11th Cir. Apr. 17, 2018).

[4] Dr. Paulillo also administered an IQ test resulting in a full-scale IQ of 70, suggesting borderline intellectual functioning. R. 49. Dr. Paulillo, however, challenged the validity of the IQ score. *Id.*(citing R. 528).

weight to the opinion of Dr. Wende Anderson, who found Claimant to be oriented to person, space, and time and noted that Claimant's functioning was observed to be at a higher level than her test results.[5] *Id.*

The ALJ then shifted her focus to Dr. Gates' findings, which the ALJ found were "[a]t the other end of the spectrum" when compared to findings of Drs. Paulillo and Anderson.[6] R. 49. The ALJ recognized Dr. Gates' finding that Claimant was very depressed, tearful, and suicidal, but noted that Claimant was never hospitalized for her mental impairments. R. 49-50. The ALJ also found that Dr. Gates recognized Claimant's tendency to exaggerate and other examinations from Dr. Gates found Claimant to be doing better. R. 50. The ALJ then provided further analysis of Dr. Gates' Mental Impairment Questionnaire as a whole:

> Todd Gates, D.O. opined on [February] 18, 2013 that [Claimant] had no useful ability to maintain attention for two hour segments, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, deal with work stress, be aware of normal hazards and take appropriate precautions, carry out detailed instructions, and deal with the stress of semi-skilled and skilled work. He added that [Claimant] has marked limitations in activities of daily living [and] social functioning, and extreme limitations in maintaining concentration, persistence, or pace. <u>Despite the complete absence of any evidence of psychiatric hospitalization, or even an emergency room visit to address [Claimant's] mental problems, [Dr. Gates] suggests that [Claimant] has had four [or] more episodes of decompensation within the past twelve months.</u> He indicated that she can be expected to be absent more than five days out of the month and would be unable to complete an eight-hour workday five days out of the month. <u>The [ALJ] rejects the draconian opinion of [Dr. Gates], finding it completely incompatible with [Claimant's] admitted</u>

---

[5] Dr. Anderson also administered an IQ test resulting in a full-scale IQ of 61, but Dr. Anderson had concerns of malingering. R. 49 (citing R. 655).

[6] The Court interprets this statement as noting that Dr. Gates' findings contradict the findings of Drs. Paulillo and Anderson. R. 49.

<u>ability to maintain her household and care for her three children and her presentation during the hearing.</u>

R. 50 (emphasis added) (citations omitted). Thus, the ALJ rejected Dr. Gates' opinion because: 1) Claimant was able to raise her children and run her household; 2) there was no evidence that she depends upon others for her personal needs; 3) there was no evidence of hospitalization or emergency room visits to address Claimant's mental limitations; and 4) Claimant's presentation during the hearing. R. 42, 50. The ALJ also found that Dr. Gates' findings were contradicted by the findings of Drs. Paulillo and Anderson, to which the ALJ gave great weight and some weight respectively. R. 49.

Claimant argues that the ALJ committed reversible error with regard to Dr. Gates' opinion for three reasons. First, Claimant argues that the ALJ improperly considered her household duties when rejecting Dr. Gates' opinion. Doc. No. 19 at 27. Second, Claimant argues that the ALJ misrepresented what Claimant admitted to doing around the house. *Id.* at 27-28. Third, Claimant argues that the ALJ improperly relied on Claimant's lack of hospitalizations and emergency room visits as a basis for rejecting Dr. Gates' opinion. *Id.* at 28-29.

Claimant's argument regarding the ALJ's reliance on Claimant's household duties is unavailing for two reasons. First, Claimant's argument ignores the other reasons the ALJ gave for rejecting Dr. Gates' opinion, namely that such opinion contradicted: 1) the opinions of Drs. Paulillo and Anderson; 2) Claimant's presentation at the hearing; and 3) Dr. Gates' treatment records stating that Claimant was doing better.[7] R. 49-50. Second, an ALJ may rely on similar daily living activities when rejecting mental limitations found in a treating physician's opinion. *See Evans v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 521, 524 (11th Cir. 2014) (finding no error

---

[7] Claimant never challenges these specific findings from the ALJ. Doc. No. 19 at 25-33. Furthermore, as noted above, Dr. Gates "recognized that the claimant tends to exaggerate" and appeared to be overstating the severity of her depression. R. 50 (citing R. 1230).

in an ALJ's rejection of mental limitations found in a treating physician's opinion because they were "contradicted by [the claimant's] self-reported daily activities, which included various household chores, light yard work, driving, shopping, visiting with friends and family, and playing chess daily.").[8]

Claimant's second argument states that the ALJ overstated what Claimant admitted to doing around the house. Doc. No. 19 at 27-28. At the hearing, the ALJ asked Claimant about her household activities, and she stated that she prepares meals and does laundry with the help of her husband and children. R. 74-75. Claimant also stated that her mother helped her with similar household chores when her children were younger. R. 75. The ALJ referred to such testimony when stating her reasons for rejecting Dr. Gates' opinion. R. 42, 50. Claimant points to evidence in the record and argues that such evidence shows that "her anxiety and depression are very disruptive to her ability to manage the household." Doc. No. 19 at 27-28. The Court, however, declines Claimant's invitation to reweigh the evidence. As noted above, the Court must give substantial deference to the ALJ's decision even if the evidence preponderates against it. *Barnes*, 932 F.2d at 1358. *See also Reynolds–Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x. 862, 864 (11th Cir. 2012) ("Because our limited review precludes us from reweighing the evidence, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.").

Claimant's third argument attacks the ALJ's consideration of Claimant's lack of hospitalizations or emergency room visits for her mental impairments. Doc. No. 19 at 28-29. Claimant's argument again ignores the other reasons the ALJ gave for rejecting Dr. Gates' opinion,

---

[8] The *Evans* court also found good cause for rejecting the treating physician's opinion because the "opinion was inconsistent with the opinions of three other physicians that concluded that [the claimant's] mental impairments were not severe." *Evans*, 551 F. App'x at 524. Here, the ALJ found that Dr. Gates' opinion contradicted the opinions of Drs. Paulillo and Anderson, who opined that Claimant's mental limitations were not as severe. R. 49.

namely that such opinion contradicted: 1) the opinions of Drs. Paulillo and Anderson; 2) Claimant's presentation at the hearing; and 3) Dr. Gates' treatment records stating that Claimant was doing better. R. 49-50. Furthermore, the ALJ rejected Dr. Gates' finding that Claimant experiences four or more episodes of decompensation, each lasting at least two weeks, within a twelve month period. R. 50. Specifically, the ALJ rejected this finding because there was no evidence of psychiatric hospitalization or emergency room visits to address Claimant's mental limitations. *Id.* The Eleventh Circuit has held that an ALJ is free to use such reasons to reject a treating physician's opinion regarding a claimant's episodes of decompensation:

> In any event, <u>even assuming that [the physician] was a treating source, the ALJ had good cause to not give his opinion considerable weight</u> …. <u>[T]he ALJ properly discounted [the physician's] opinion that [the claimant] experienced continual episodes of decompensation, because there was no record evidence of ongoing mental health treatment or extended periods of decompensation requiring supporting care or mental health hospitalization.</u> Thus, the ALJ correctly accorded little weight to [the physician's] opinion that [the claimant's] functional restrictions were extreme.

*Saucier v. Comm'r, Soc. Sec. Admin.*, 552 F. App'x 926, 929-30 (11th Cir. 2014) (emphasis added). The ALJ provided good cause reasons for rejecting Dr. Gates' opinion, and thus, the Court finds no reversible error in the ALJ's treatment of the same.[9]

### B. Drs. Belcon and Weiss

On April 7, 2014, Dr. Michael Belcon, a treating physician, completed a Fibromyalgia Medical Source Statement stating the following findings. R. 1122-27. Claimant can sit and stand for up to thirty minutes at a time and for a total of about two hours in an eight-hour workday. R.

---

[9] Claimant also argues that the ALJ erred in giving great weight Dr. Paulillo's opinion because: 1) her opinion was issued before Dr. Gates' opinion; and 2) the person who conducted the interview which was the basis of Dr. Paulillo's opinion was a student from the Florida Institute of Technology School of Psychology. Doc. No. 19 at 30-31. Claimant's first argument, however, fails to recognize that the ALJ considered the record as a whole and found that Dr. Paulillo's opinion was more consistent with the evidence. R. 48-49. Claimant's second argument ignores the fact that Dr. Paulillo, described as the "vendor" in the opinion, interacted with Claimant multiple times during the interview. R. 521, 523, 524, 527, 528. Furthermore, Dr. Paulillo signed the opinion. R. 528.

1124-25. Claimant will need to rest for five minutes every half-hour. R. 1125. Claimant can occasionally lift/carry up to ten pounds, rarely lift/carry over twenty pounds, and never lift/carry over fifty pounds. *Id.* Claimant can minimally stoop, crouch, squat, climb stairs, look up, and hold her head in a static position. *Id.* Claimant is incapable of low stress work. R. 1126. Claimant will be absent from work two days per month and will be unable to complete an eight-hour workday for five days or more per month due to her impairments. *Id.* Claimant is likely to be off task fifteen percent of the day. *Id.*

On August 7, 2014, Dr. Gary Weiss, a treating physician, completed a Multiple Sclerosis Medical Source Statement stating the following findings. R. 1129-33. Claimant can sit for thirty minutes at a time and for a total of about four hours in an eight-hour workday. R. 1130. Claimant can stand for twenty minutes at a time and for a total of less than two hours in an eight-hour workday. *Id.* Claimant can occasionally lift/carry up to ten pounds, rarely lift/carry between ten to twenty pounds, and never lift/carry more than twenty pounds. R. 1131. Claimant cannot twist, stoop, or crouch. *Id.* Due to her impairments, Claimant would be absent from work for five or more days per month and is unable to complete an eight-hour workday for five or more days per month. R. 1132. Claimant is likely to be off task more than twenty-five percent of the workday. *Id.*

The ALJ rejected the opinions of Drs. Belcon and Weiss (the "Opinions"), finding that they were not supported by their treatment notes. R. 47. The ALJ noted that Dr. Weiss found that: 1) Claimant's multiple sclerosis was stable; 2) Claimant's gait was normal; 3) an MRI of Claimant's lumbosacral spine was normal, as was an EEG; and 4) Claimant has a negative straight leg raise test. *Id.* The ALJ also noted findings from Dr. Belcon stating that Claimant has: 1) 5/5 motor strength and full range of motion in her joints; and 2) an absence of joint swelling or detectable limb weakness. *Id.* The ALJ then rejected the Opinions and gave great weight to the opinion of

Dr. Homi Cooper, "whose opinion, unlike those of Dr. Belcon and Dr. Weiss, does not conflict with the objective medical findings." *Id.*

Claimant does not directly challenge the ALJ's findings. Doc. No. 19 at 29-30. Instead, she argues that the "ALJ ignored the following medical findings" and lists a number of findings that support her disability claim. *Id.* The ALJ's findings, however, were supported by substantial evidence, and thus, the Court declines Claimant's invitation to reweigh the evidence for the reasons stated previously. *See supra* p. 8. The ALJ provided good cause reasons for rejecting the Opinions, and thus, the Court finds no reversible error in the ALJ's treatment of the same.

### C. State Agency Physicians

At step four, the ALJ stated that she "considered the opinions of state agency medical consultants and program physicians [stating] that [Claimant] can perform a limited range of light work …" R. 48. The ALJ did not state the weight given to such opinions, but found them to be "well supported by the evidence of record." *Id.* Claimant argues that the ALJ erred by making this finding despite rejecting the opinions of Claimant's treating physicians. Doc. No. 19 at 31-34. This Court, however, has stated that when "an ALJ properly rejects the opinions of a claimant's treating sources, the ALJ may rely on the opinion of a non-examining, state agency medical or psychological consultant where the record otherwise supports the opinion." *Braun v. Berryhill*, No. 8:16-cv-794-T-DNF, 2017 WL 4161668, at * 7 (M.D. Fla. Sept. 20, 2017). *See also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x. 869, 874 (11th Cir. 2011) (finding that the ALJ did not err in giving significant weight to the opinion of a state agency medical consultant where the ALJ appropriately discounted treating physician's opinion).[10] As detailed above, the ALJ stated good

---

[10] Claimant cites an Eleventh Circuit reported decision, *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001) in support of her argument. Doc. No. 19 at 33. The Court in *Vega* did not address the issue of whether an ALJ may give more weight to a state agency consultant's opinion than a treating physician's opinion that was properly discounted. *Id.* at 1219-20. Instead, the Eleventh Circuit found that the ALJ committed reversible error by failing to

cause reasons for rejecting the opinions of Drs. Gates, Belcon, and Weiss. *See supra* pp. 4-11.

Accordingly, the Court finds no reversible error in the ALJ's finding.

V.  **CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1) The final decision of the Commissioner is **AFFIRMED**; and

2) The Clerk is directed to award judgment in favor of the Commissioner and against Claimant and thereafter close the case.

**DONE and ORDERED** in Orlando, Florida on June 26, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Bradley K. Boyd
Suite D
1310 W Eau Gallie Blvd
Melbourne, FL 32935

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798

Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Gloria B. York
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224

---

consider, or even discuss, a diagnosis of Chronic Fatigue Syndrome from two treating physicians. *Id.* Thus, *Vega* does not apply to this case.